IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01285-RBJ

DAVID SAVACOOL,

    Plaintiff,

v.

WEIR OIL & GAS,

    Defendant.

---

ORDER ON MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Weir Oil and Gas's (also known as S.P.M. Flow Control, Inc. and "SPM" for purposes of this order) motion for summary judgment (ECF No. 32) and motion to strike Plaintiff David Savacool's declaration (ECF No. 35). For the reasons discussed below, the motion to strike is GRANTED IN PART AND DENIED IN PART and the motion to for summary judgment is GRANTED.

## I.  BACKGROUND

This case arises from plaintiff's employment as a service technician at SPM's Fort Lupton site. ECF No. 32. Plaintiff was hired by Branch Manager Santos Soto in late summer of 2014; he was forty-eight years old at the time. *Id.* He was initially hired for a position called "Service Technician 1." *Id.* In December 2016, plaintiff was promoted by Mr. Soto to the position of "Service Technician 2." *Id.* In December 2017, plaintiff was again promoted, this time to "Service Technician 3." *Id.* As a Service Technician 3, Mr. Savacool assembled and

1

tested various mechanical components. *Id.* Because plaintiff was a senior service technician, he was also responsible for indirect leadership and occasional safety meetings. *Id.*

Mr. Savacool alleges that, for years, his coworkers have called him names relating to his age, such as "papa" or "old man." ECF No. 1. He brought this to the attention of his direct supervisor, Donnie Hughett, in 2017, but the name-calling did not cease. *Id.* He alleges that Mr. Hughett made similar comments to him. ECF No. 33-3 at ¶3.

In November 2018, plaintiff had a stroke. However, he was back on the job within four days and did not have any continuing symptoms or consequences. *Id.* at ¶4. Plaintiff alleges that he brought a renewed complaint of age-related name-calling to Mr. Hughett's attention in December 2018 because his coworkers were making repeated comments about his age and need to use the bathroom frequently. *Id.* at ¶7. He again requested that Mr. Hughett stop these comments, but the comments continued. *Id.*

Counselings

According to the motion for summary judgment, before December 2018 Mr. Savacool had had at least four "counselings." ECF No. 32 at 5. Defendants state that on December 20, 2018 plaintiff had an accident on a forklift that damaged a fire extinguisher. *Id.* Plaintiff disputes that this accident occurred, but he nonetheless was given written counseling and attended a meeting about the alleged accident. *Id.* Shortly thereafter, he had certain leadership duties removed (without change to his title or pay). *Id.* at 5-6.

On January 2, 2019, plaintiff's wife submitted an anonymous complaint to SPM's ethics hotline. *Id.* at ¶8. His wife complained of employees "returning from lunch smelling of marijuana, employees clocking in before arriving at work, employees leaving a bag of white powder with my [plaintiff's] name on the bag (supposedly as a joke), and equipment and trailers

2

being damaged without the damage being reported." *Id.* at ¶9.  Following this complaint, plaintiff was called into Mr. Soto's office and asked if he knew about the anonymous complaint. *Id.* Plaintiff explained that his wife made the complaint based on things he had told her. *Id.*

On April 25, 2019, plaintiff lifted a part that weighed fifty-four pounds and was injured in the process. *Id.*  SPM has a safety policy that requires employees to use lift assists when moving any item exceeding fifty pounds. *Id.*  SPM opened an investigation into this incident. *Id.*

On April 28, 2019, one of Mr. Savacool's coworkers, Mr. Kameron Belle, allegedly saw Mr. Savacool smoking outside of SPM's designated smoking area and near the propane tanks on site. *Id.*  Mr. Savacool contends that he was thirty-five feet away from the building and the propane tanks, although he admits he was smoking outside the designated smoking area. ECF. No. 1.  Mr. Belle wrote an email to plaintiff's supervisor, Donnie Hughett, detailing the smoking incident. ECF No. 32.  Mr. Hughett shared that email with human resources partner Sara Caminada and Mr. Soto. *Id.*  Ms. Caminada recommended termination based on the severity of the smoking infraction coupled with his past counselings. *Id.*  Mr. Soto agreed with Ms. Caminada's recommendation for termination. *Id.*  On May 2, 2019, Mr. Savacool was given his final counseling (for the lifting infraction) and attended a termination session (for smoking outside of a designated area). *Id.*

Plaintiff filed the instant age discrimination action in April of 2020. ECF No. 1.  He alleges that SPM fired him so that it did not have to worry about the physical ailments associated with plaintiff's aging. *Id.*  He alleges that he was fired for an impermissible reason: his age. *Id.*

After discovery, defendants moved for summary judgement. ECF No. 32.  Plaintiff, in its response to defendant's motion, included a declaration by plaintiff. ECF No. 33-3.  Defendant

moved to strike this declaration claiming it hearsay, contradictory, and without sufficient basis. ECF No. 35.

## II.   MOTION TO STRIKE

### A. Standard of Review

The Court is allowed to strike from a pleading any "redundant, immaterial, impertinent or scandalous matter." *Ctr. For Native Ecosystems v. U.S. Fish & Wildlife Serv.*, 2010 WL 2035580 at *2 (D. Colo. 2010).  A matter is redundant if it consists of "allegations that constitute a needless repetition of other averments or which are wholly foreign to the issue to be decided." *Id.*  "A matter is immaterial if it has no essential or important relationship to the claim for relief ple[d]." *Id.*  A matter is impertinent when "it does not pertain and is not necessary to the issues in question in the case. *Id.*  A matter will be struck as scandalous only if it will degrade a party's "moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997). Even when a challenged allegation falls within the categories set forth in the rule, "a party must usually make a showing of prejudice before the court will grant a motion to strike."  *Id.* (citing 5A Wright & Miller § 1382, at 690–92).

To be considered on a motion for summary judgment, evidence must be admissible.  *See L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009).  As a result, portions of declarations that are based on hearsay or do not come from the personal knowledge of the declarant should be struck for purposes of a motion for summary judgment.  *See Fuller v. Old Dominion Freight Line, Inc.*, 2018 WL 2335696 at * 2 (D. Colo. May 23, 2018).  "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually

perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotations omitted).

"Courts may disregard an otherwise proper affidavit if the court first determines that the affidavit's purpose is to create a sham issue of material fact, but there is no authority to disregard the affidavit simply because it contradicts an affiant's prior sworn testimony." *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, n.4 (D. Colo. 2020). To determine whether an affidavit creates a sham fact issue, the court considers whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir.2001).

### B. Hearsay Statements

SPM argues that several statements plaintiff made in his declaration should be struck because they would be inadmissible hearsay and thus are not appropriate for consideration on a motion for summary judgment. *See* ECF No. 35. Plaintiff responds that the statements made in the declaration are not hearsay. *See* ECF No. 36.

Hearsay is an out-of-court statement that a party seeks to introduce to prove the truth of the matter asserted. Fed. R. Evid. 801(c). An out-of-court statement offered to show the effect of that statement on a listener is not hearsay. *See People v. Robinson*, 226 P.3d 1145, 1151 (Colo. App. 2009). A statement offered against a party opponent is excluded from the hearsay definition if it was made by the party's agent or employee on a matter within the scope of the employment relationship. Fed. R. Evid. 801(d)(2)(D).

In paragraph three of the Savacool Declaration ("the declaration"), ECF No. 33-3, plaintiff wrote that "my co-employees began calling me 'Papa' and 'old man' and told me to 'move my slow ass.'" *Id.* at ¶3.  Plaintiff also wrote that his supervisor, Mr. Hughett, also called him these names and told him that he should retire.  *Id.*  Defendant asserts that this is hearsay and asks that it be struck.  Plaintiff obviously does not seek to prove that he is an "old man" or that he should retire.  He seeks to prove that the statements were made which could have some tendency, at least with respect to the Hughett statements, to show age discrimination.  The statements of co-workers and Mr. Hughett also have some tendency to support plaintiff's claim that he felt demeaned and belittled by the statements.  The statement in paragraph seven, that "my co-employees constantly made fun of the number of trips I went to the bathroom, blaming it on my age," is similar.  ECF No. 33-3 at ¶7.  It is not introduced for the truth of the matter.  What co-workers said might be of marginal relevance, but giving plaintiff the benefit of the doubt, he is suggesting that such statements were also made by, or with the knowledge of, his supervisors.

Likewise, plaintiff's statement that he "asked Mr. Hughett to tell the co-employees to stop making such comments" is not hearsay.  *Id.* at ¶3.  It is an out-of-court statement, but plaintiff seeks to introduce it because it shows the effect on the listener, i.e., to show that Mr. Hughett knew that plaintiff found the age-based name calling unpleasant and wished it would stop.  The same analysis applies to plaintiff's statement in paragraph seven of the declaration that "I explained to Mr. Hughett that I had to go to the bathroom frequently due to my new diabetic medication and asked that Mr. Hughett put a stop to these comments."  *Id.* at ¶7.

Next, SPM argues that the statements in paragraph six of the declaration are hearsay.  ECF No. 36.  There, plaintiff wrote, "The [c]ompany called this practice [the practice of giving

6

an employee many written infractions in a short period] 'managing out' and used this practice when it wanted to get rid of employees." ECF No. 33-3 at ¶6.  Plaintiff says that what he meant to say was that "managing out" was what he and his colleagues called the practice, ECF No. 37. Accepting plaintiff's rewriting of his own declaration, what Mr. Savacool or other employees called what they perceived to be the company's practice does not have a tendency to prove that there was such a practice, but even if it could be viewed as relevant for that purpose it would be inadmissible as hearsay.

Defendant also asks the Court to strike a statement from paragraph eight for hearsay.  In that paragraph, plaintiff described what his wife said in an anonymous phone call to the SPM ethics hotline.  Plaintiff wrote that she "identified herself as an employee's wife and complained of employees returning from lunch smelling of marijuana, employees clocking in before arriving at work, employees leaving a bag of white powder with [plaintiff's] name on the bag (supposedly a joke), and equipment and trailers being damaged without the damage being reported."  ECF No. 33-3 at ¶8.  This statement is not hearsay as it is being introduced by plaintiff to show that SPM had notice of these alleged safety issues.  However, an anonymous phone call complaining about problems of which the caller had no personal knowledge is not admissible on relevance grounds.

C. **Statements Contradicting Deposition Testimony**

SPM also contends that certain portions of the declaration should be struck because they contradict prior statements made by plaintiff at his deposition.  I note that contradictions are the grist for the mill of cross-examination.  As indicated above, there is no authority to disregard a declaration simply because it contradicts the declarant's prior sworn testimony unless the Court finds that the purpose of the declaration was to create a sham issue of fact.

7

The first alleged contradiction raised by SPM is that in the declaration plaintiff wrote that in early summer of 2015 his coworkers began making comments to him about his age and that he brought up the name calling to Mr. Hughett. However, in his deposition he said he first raised concerns about the name calling in 2017. ECF No. 35. SPM argues that this contradiction was an attempt by plaintiff to create a sham fact issue. It is not clear to the Court that there is a contradiction here. In the declaration, plaintiff is saying that the name calling began in 2015, but it is not clear that he is saying that he first raised the issue with Mr. Hughett in 2015. Regardless, even if there is a contradiction on this timing, I have no reason to speculate that the declaration was an attempt to create a sham fact issue. Regardless of whether Mr. Hughett knew in 2015 or 2017 that plaintiff was upset by the name calling, he knew it before SPM began citing plaintiff for infractions in 2018 or firing him in May of 2019.

SPM next points out that in his declaration, plaintiff wrote that "I asked Mr. Hughett to tell the co-employees to stop making such comments, but Mr. Hughett never did." ECF No. 33-3 at ¶3. In his deposition, he said that Mr. Hughett "talked to the guys" after he complained. ECF No. 32-2 at p. 32. This is not necessarily contradictory—in his deposition testimony plaintiff said that Mr. Hughett talked to the guys, but he did not say that Mr. Hughett told them to stop making comments about plaintiff's age.

Finally, defendant notes a contradiction between plaintiff's declaration and deposition testimony involving the anonymous call that his wife made to SPM's ethics complaint line. ECF No. 35. It is of no consequence, as the Court disregards the statements made by plaintiff's wife as lacking any credible foundation.

D. **Statements that Lack Sufficient Foundation**

SPM also asserts that certain other statements in the declaration should be struck because plaintiff lacked personal knowledge. An affidavit will be found inadmissible if the affiant could not have observed what he testifies to. *Argo*, 452 F.3d at 1200. First, SPM objects to plaintiff's declaration that "every employee lifted this part [which weighed more than fifty pounds—SPM had a policy that employees had to use lift assist if they were lifting anything over fifty pounds] . . .without using a lifting aid and were not disciplined." ECF No. 33-3 at ¶10. The statement that "every" employee did this appears to be rhetorical exaggeration. The Court takes it to mean that plaintiff has observed several other employees lifting this part. However, it is not evident that plaintiff has personal knowledge that no employee was ever disciplined for this infraction. Therefore, the Court gives no weight to this statement.

SPM next takes issue with plaintiff's statement that "[e]mployees often smoked cigarettes outside the one designated area without suffering any discipline." ECF No.33-3 at ¶12. The Court infers that plaintiff has seen other employees smoking in this area. After all, he worked at the SPM's Ft. Lupton site for over four years. However, as above, he has provided no evidence of his personal knowledge that none of them were disciplined for the infraction.

SPM also objects to plaintiff's statement that "Mr. Belle could not have seen my face [when he was allegedly smoking outside the designated area], because I was behind a trailer, and he must have assumed that I was smoking." Whether Mr. Belle saw or otherwise perceived that plaintiff was smoking is sheer speculation on plaintiff's part. At best the Court would interpret the statement as indicating that plaintiff does not believe that Belle was in a position to be physically able to see his face. The Court places no weight on plaintiff's assumption.

### E. Conclusion

The bottom line is that the Court finds that certain parts of the declaration should be struck or disregarded by the Court. The motion is granted in part and denied in part.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

The Court can grant summary judgment where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A fact issue is material if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of showing a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Allegations that are unsupported by probative evidence or conclusory allegations that factual issues exist are insufficient to prevent the grant of a motion for summary judgment. *Anderson*, 477 U.S. at 247–48. In applying this standard, this Court must view the record and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Adler*, 144 F.3d at 670.

For plaintiff to prove that he was fired based on age discrimination, under the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402 ("CADA"), he must show that: (1) the employee belongs to a protected class; (2) the employee was qualified; (3) despite being qualified, the employee suffered adverse employment action; and (4) the circumstances give rise to an inference of discrimination based on membership in the protected class. *Williams v. Dep't of Pub. Safety*, 369 P.3d 760, 771 (Colo. App. 2015). "If the employee establishes a prima facie

case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employment decision.'" *Id.* (quoting *St. Croix v. Univ. of Colo. Health Sci. Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007)). If the employer can establish a legitimate, nondiscriminatory reason for the employment decision, the burden shifts back to the employee to show that the reason given for the employment decision by the employer was pretextual. *See id.* This analysis is the same standard used to analyze employment discrimination in the federal system (that standard is commonly referred to as the *McDonnell Douglas* framework). *See Frank v. City of Fort Collins*, No. 18-CV-03204-RBJ, 2019 WL 3935176, *7 (D. Colo. 2019).

### B. SPM's Legitimate, Nondiscriminatory Reason for Its Actions

Plaintiff is in a protected class. It does not appear to be disputed that he was qualified to perform the tasks of the position. He did suffer an adverse employment action. Defendant has offered nondiscriminatory reasons for terminating Mr. Savacool, i.e., that he committed a violation of a company safety rule. The question here is whether that reason was pretextual. Unfortunately for the plaintiff, the Court finds that he has not raised a genuine dispute of material fact as to that question.

Plaintiff advances three arguments that SPM's reason for terminating him was not legitimate. First, he argues that he was not smoking by the propane tanks—as a result, he reasons, SPM was wrong to terminate him for doing so. Second, he argues that representatives of SPM gave inconsistent reasons for his termination, which gives rise to an inference that SPM's reason was pretextual. Third, plaintiff contends that smoking near propane tanks would not be considered dangerous by anyone, and as a result, SPM's reason must be pretextual.

1. <u>Whether Plaintiff was Smoking Near the Propane Tanks</u>

SPM contends that its legitimate reason for terminating plaintiff's employment is, following a series of infractions and discussions with plaintiff about his job performance, that plaintiff was seen smoking a cigarette outside of the designated smoking area, allegedly next to propane tanks. ECF No. 32. Plaintiff contends that he was not next to the propane tanks, though he admits he was smoking outside the designated smoking area. ECF 33-3 at ¶12.

In examining whether an employer has shown that it has a legitimate, nondiscriminatory reason for its actions, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999), overruled on other grounds by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Just because there is evidence that the employer erred in its employment decision— for instance if the employer was mistaken about certain facts—it is not enough to show "the employer's explanation is unworthy of credibility." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 948 (10th Cir. 2011). A court's role is not "second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017)(quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

When SPM made the decision to terminate plaintiff, all it knew about the incident is what it heard from Mr. Belle, the employee who reported the incident, and from plaintiff. Mr. Belle asserted that he "caught him [plaintiff] smoking next to the propane tanks." ECF No. 32-4 at 4. Mr. Hughett stated that when he confronted plaintiff about the smoking incident, "he never denied that he was, in fact, smoking by the propane tanks. *Id.* at 2. To the contrary, plaintiff asserts that when he was confronted by Mr. Hughett about smoking by the propane tanks, he

12

"told him [Mr. Hughett] that that was basically bullshit." ECF No. 32-2 at 25.  Plaintiff said that the termination happened very quickly, and he was not given a chance to explain himself.  *Id.*

This Court is not here to second guess whether SPM was wise to have relied entirely on Mr. Belle's statement or should have given Mr. Savacool more of an opportunity to explain himself.  Plaintiff has not presented any evidence to suggest that SPM did not have a genuine belief that plaintiff had been smoking by the propane tanks based on Mr. Belle's report.

      2.   <u>Inconsistency from SPM on Why Plaintiff was Fired</u>

Plaintiff argues that his firing was illegitimate because different deponents for SPM gave different testimony on why he was terminated.  He contends that SPM's designated company deponents varied on whether he was terminated for smoking next to a propane tank or terminated due to performance issues.  *See* ECF No. 33.  In her 30(b)(6) deposition, Sara Caminada, a human resources employee for SPM, testified that plaintiff was fired for failing to follow safety protocol by smoking near the propane tanks.  ECF No. 32-3 at 6.  When asked if there was any other reason he was fired, she said "[n]o."  *Id.*  However, on the same page of the deposition transcript, she testified that she had "reviewed all of what we have and all of what was given to me," when deciding whether to recommend plaintiff's termination.  *Id.*  She later testified that she recommended that plaintiff be terminated after the smoking incident "because of his previous counselings."  *Id.* at 15.  Mr. Soto, branch manager, in his 30(b)(6) deposition, testified that plaintiff was terminated not just for smoking, but for smoking next to the propane tanks.  ECF No. 32-5 at 17.

Plaintiff contends that the testimony from Ms. Caminada and Mr. Soto show inconsistent reasons for termination, which indicates that SPM's reason for terminating plaintiff was pretextual.  However, I find that the reasons given by Ms. Caminada and Mr. Soto were not

13

inconsistent. Both say that the impetus was the smoking incident. Ms. Caminada went into greater depth about what was considered when making the determination to terminate plaintiff and specified that she and others did consider his past counselings. Though Mr. Soto did not talk about whether anything other than the smoking incident was considered in plaintiff's termination, unlike Ms. Caminada, no one requested that he do so. Even reading the evidence in the light most favorable to plaintiff, plaintiff has not shown that Mr. Soto and Ms. Caminada presented inconsistent reasons for plaintiff's termination—he has not raised a genuine dispute of material fact on this issue.

       3.  <u>Whether Smoking Within Twenty Feet of the Propane Tanks Poses a Safety Concern</u>

Plaintiff next argues that "it is unbelievable that smoking within twenty feet of a barbeque propane tank is any type of safety concern." ECF No. 33 at 10. He argues that the issue turns on whether a rational jury could infer that SPM did not actually fire him for smoking near a propane tank. *Id.* Plaintiff says everyone knows there is no safety threat from smoking near propane tanks. *Id.* Plaintiff has not raised a genuine dispute of material fact on this issue.

A genuine dispute arises if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler.*, 144 F.3d at 670. Plaintiff has presented no evidence that SPM did not believe there was a safety risk to smoking next to the propane tanks. He has merely asserted that it is "unbelievable" that anyone would think so. Mere assertion or conclusory allegation is not sufficient to create a genuine dispute of material fact. *Anderson*, 477 U.S. at 247–48. Plaintiff has failed to create a genuine dispute on the issue of whether SPM believed that smoking near propane tanks did not constitute a real safety risk. He cannot defeat a motion for summary judgment merely by asserting that no one would believe that

there was a safety issue in bringing a lit cigarette near containers filled with a highly flammable substance.

## ORDER

1. SPM's motion for to strike portions of plaintiff's declaration, ECF No. 35, is GRANTED in part and DENIED in part as outlined above.

2. SPM's motion for summary judgment, ECF No. 32, is GRANTED.

3. This case is dismissed with prejudice. As the prevailing party, defendant is awarded costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 27th day of September, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge